to find the fact that the subject matter must be official and involve a formal exercise of governmental power. And in addition, the act must be either an act by the public official, him or herself, or that official pressures or advises another official to take official action. But the Court was clear that even in the pressuring and advising situation, the person exercising the pressure or advice has to themselves be using their official position. And indeed – Let me interrupt you for a moment, because as I understand the government's response to your argument, and I want to know your view on why we should not accept it, is that McDonnell involved a person who was then holding public office, and so the Court's opinion was all written in that light, that it never actually considered the question that you're raising about whether someone in the period when they were not a public official sandwiched between two terms of public service, whether that conduct could inform this action. And the government argues that's established circuit precedent here, and so they argue not a closed question. Tell us why we shouldn't be persuaded. Certainly, Your Honor. First of all, it is true that the precise question certainly was not directly before the Court. Nonetheless, the Supreme Court has never in any case held that a private citizen in this type of situation can owe a duty of honest services to the public. The only case the government has cited in that regard is an old case which involved a very different situation involving a grant holder that by law under a Federal statute was exercising actual government power. And I might be persuaded that that is a novel question, except for the government's argument that we have considered it pre-McDonnell and ruled that a non-public servant can be responsible. So, I mean, we're not deciding the merits of the case, obviously. All we're deciding is whether this is either a closed question or a novel question, the Randall standard. How do you deal with the fact that they point to precedent pre-McDonnell that seems to go against you? Well, I think that even the district courts submitted that some of the language in McDonnell that we rely on, quote, can arguably be read, close quote, to mean that a private citizen's pressuring an official is not official action. And I think there is a close question at a minimum, and that the district court statement suggests that it's debatable, which is another word in the Randall opinion for the standard, as to whether the Margiotta case survives McDonnell. In addition, I would point out that Margiotta stands alone, and it was decided not only before McDonnell, but before McNally, before Skilling, and all of these cases raise serious constitutional questions about this theory, particularly since we are dealing with a broad and somewhat amorphous statute that the Supreme Court in subsequent years has narrowed in several different ways in the Skilling and the McDonnell case. And I would submit also that McDonnell talks in detail about three different types of constitutional concerns that led the Supreme Court to narrow the statute, and those concerns apply here. And in particular, among other things, the First Amendment concern and the concern that a private citizen in a position like Mr. Percoco during the time period we're talking about, how do you distinguish that from a lobbyist who's recently left government and someone retains to help them with a problem with government? And, indeed, the evidence in this case shows that Mr. Aiello, in an e-mail during the period that Mr. Percoco had left the governor's office, specifically asked, can Joe P. help with labor issues for a few months while he's off the second floor? So I would submit all of that, at a minimum, establishes that. Kagan, I'd like to give you a little bit more time here, so not to worry about the red light. The district court opinion suggested that she thought this issue regarding Margiotta had not been developed and was, in fact, waived below. Could you address that question? Yes, Your Honor. It was not waived.  But during the charge conference, and I should add that it was clear that, on the record, that the defendants all joined in each other's objections, that Mr. Percoco's counsel went into some detail objecting to a draft of the charge that included the private citizen theory. The language was slightly different originally. At pages 5779 to 80 of the transcript, he objected and said, only someone who is a government official can perform an official act. The court disagreed, said that wasn't a correct statement of the law. Again, at pages 5824 to 25, Mr. Percoco's counsel repeated, I think it should be honest services as a public official, and again raised the issue. He raised it again, I won't bore the quote with all the court with all the quotes, transcript 5833, transcript 5834. You think substantively the issue was raised in the district court and had an opportunity to rule on that? Yes. It was raised in the district court repeatedly, and then the court made clear it disagreed. And then at that point, Mr. Percoco's counsel proposed specific language from the Margiotta case given the court's response. And then after that, Mr. Aiello's counsel also repeated again that Mr. Aiello preserved his objection on this ground. So I think there's no issue about that, and indeed the government doesn't pick up on that point in their opposition papers. I see my time is up. Could I just have one additional minute to say a few words about the as opportunities arise, which as I indicated, I think any one of these is sufficient. So the argument here is, and the second substantial question is whether the stream of benefits or as opportunities arise theory of bribery in this circuit survives McDonnell. And McDonnell identifies official act in a very specific way. It requires the jury to identify a matter involving the formal exercise of governmental power, which is specific and focused and pending or could by law be brought before a public official, and the official has to take an action. And critically, the court said the jury must determine whether the public official agreed to perform an official act as defined at the time of the alleged quid pro quo. And here, and in addition to that, the court sent the case, sent the case back for further proceedings, either dismissal or a new trial, because the instruction in the McDonnell case did not inform the jury that the question matter, cause, suit, et cetera, must be more specific and focused than a broad policy objective. And here, the instruction clearly did not require the jury to make that finding. The instruction said the government does not have to prove that there is an express or explicit agreement that any particular official act would be taken as long as the payments are intended, at least in part, to be in exchange for official action as the opportunities arose. And I respectfully submit that at a minimum, it's a substantial question whether this Court's theory survives McDonnell. And although not precedential, I note, as we do in the papers, that Sheldon Silver's appeal presented this as one of two issues, and the Court granted bail. So you would say that the — go ahead, Bob. No. I was just going to say, having been on that panel and realizing how opaque this sort of a proceeding is when it ends with an order, a one-page order, I'm not sure how much — there are things you can find out from it, but I'm not sure. I'm saying this for a reason. I'm not sure how much you should read into things that happened there. It was an order. It was a one-page order. But the reason I say that is I want to ask you a question, and I want to make it clear I'm not implying anything. But the question is how long would it take to brief an appeal like this, and do you have any suggestion of how long the appellate process, you know, up to argument — you can't do anything about it after argument — do you have any sense of how long that would take? Well, it's a little bit complicated in this case because these two appellants are joined with three other appellants, and so I don't know if the Court could split it up. We — you know, to expedite. You wouldn't mind splitting it up? We wouldn't mind, but obviously I can't speak for the other three appellants. And the appellants' brief is actually due — it's due, I think, in about six weeks. So — but we certainly wouldn't object if the Court wanted to potentially split this up from the other. So it's a trial together, all six? No. So what happened was there originally all the defendants were indicted together, and then the district court, over my client's objection, actually severed it into two trials, one with Mr. Percoco and several other defendants, including Mr. Aiello and his partner, and then a second trial involving — it turned out a total of four defendants. And that part of the case is not at issue here because the district court agreed that — How many people are in the trial that your client's involved in? Well, there were two trials. So there were — the people that are left from one trial are — the first trial are Mr. Aiello and Mr. Percoco, who's also here arguing for bail. And then there was a second trial that involved four defendants who were all appealing. But with respect to the judgment in the case in which your client was tried and convicted, how many people are involved? So I don't mean to be difficult, Your Honor. There's only one judgment as to my client. So that's why — there were two trials, but there's only one judgment because it was originally part of one indictment. There's a total of five appellants joined in one consolidated appeal. The Court could, I suppose, even though there's only one judgment as to Mr. Aiello, split it into two different appeals. Was Mr. Aiello's judgment based only on what happened at the January trial? No. It was also based on — so the sentence is as to both, yes. Is that clear, Your Honor? Thank you. Thank you very much. Mr. Laughlin. And I'll give you some extra time as well, sir. Thank you, Your Honor. May it please the Court, Walter Laughlin for Joseph Prococo. I won't repeat the arguments of counsel for Aiello, except to note that all of them apply equally to Mr. Prococo. Perhaps two footnotes to that. The substantial question of the validity of the as-opportunities-arise instruction applies to Mr. Prococo's program gratuity bribery conviction as well as the conspiracy of honest services fraud convictions because the jury was instructed with respect to that gratuity bribery count that it could convict on the basis of future conduct. Second, to underline the private citizen point, two government witnesses testified that Mr. Prococo intended to transition to the private sector after the campaign. So in addition to his inability as a legal matter to perform an official act as a private citizen, as a matter of just the evidence, he had no intention at any future point. But what did the evidence show about how quickly he, in fact, reentered the government after the election? Well, the election was early November. At some point during that month, the governor prevailed upon him to return to government service, really for two reasons. There had been departures of citizens. How quickly was my question? Yes. I think he transitioned back around December 8th, but there was a certain period during sort of paperwork and that sort of thing. But initially, when he left in April, his intention was not to come back after the 2014 election in November. And so, as I say, not only was he legally incapable of performing an official act as a private citizen, he was in no position to do so in terms of his own intention in the future until after the election. As our prior briefing demonstrated as well, the government relied on evidence with respect to all of Mr. Prococo's three convictions during the period that he was a private citizen, both on the so-called CPV side of the case and the core side of the case. And the, you know, Margiata instruction did not cure the decision that Mr. Prococo had made on this fact. The instruction requires domination and control of governmental functions. And there was no evidence in support of that particular charge. You may recall from the briefing that Margiata, according to this Court, held a stranglehold over local government and county government in Nassau County. All the government can point to here to satisfy the Margiata instruction that was given was that while Mr. Prococo was managing the campaign, he coordinated private political and public events of the governor with people in Albany, and he had discussions with his some of his former colleagues about postponing their plans to leave government service. Sotomayor, am I correct, though, that the jury was charged that they had to find  That's correct, Your Honor. So this is a sufficiency challenge. It's not the same as the arguments that Ms. Shapiro was advancing. You're now saying the evidence was insufficient as a matter of law to allow that. That seems to me to be a harder argument for you to make as the basis for bail than some of the legal arguments that we've just heard. Do you want to tell me why you don't think the jury could have found this? Well, as I pointed out, Your Honor, the record was insufficient to justify an instruction. Well, the merits panel will hear that, I guess. But anything else on your bail application? Well, yes, Your Honor. I would like to address the so-called harmless error point that the government has briefed. Any instructional error or other errors of the trial were not harmless because they were not overwhelmed by record evidence of guilt. In this particular case, 14 counts went to the jury. The jury convicted on four counts, returned eight counts of acquittal, and deadlocked on two counts. And therefore, those circumstances do not allow for harmlessness from any I think the government asks us to look at the particular scheme of the count in which they argue the vast majority of your client's actions were taken while he was on the government payroll. And only a modest, they argue, amount of actions were taken while after he left. And so they're saying it would be inconceivable that a jury would convict him based only on the actions he took as a private citizen when, you know, whatever they're saying, 70, 90 percent of the actions were taken on the government payroll. What's your response to that? Well, my response to that is, is there a plausible way a jury could have convicted him based only on the actions he took as a private citizen? Well, even if the jury was certainly invited, you know, to convict on that basis. But even if you look more broadly at the government's evidence of official acts, it seems to be at least a substantial question whether, during the period that Mr. Prococo was back in government service, he engaged in any conduct that could be called an official act. That's, again, a sufficiency question, right? You're now arguing, though, that they could, since that will have to be looked at in the light most favorable to the government, then the question is whether we can conclude that no reasonable jury without the private citizen actions would have done anything but convict him. No, I was trying, Your Honor, to respond to your question about the other parts of the case when he was in government service. And my view is that the basis for their harmlessness argument is that he was in government service, and isn't it, that the evidence of his misconduct while in government service was so overwhelming that they would have convicted even without the evidence on that one scheme of the relatively small number of acts he took in as a private citizen. Yes, Your Honor. I was trying to be responsive by turning my attention to those particular allegations of official acts while back in government service. And, you know, and we've briefed these. The government alleged that there were two official acts, that Mr. Prococo directed other government officials to approve something called the Reciprocity Agreement, and he pushed to obtain a power purchase agreement for CPV, all because CPV had hired his wife. We've shown in our earlier briefing that with respect to the Reciprocity Agreement, all Mr. Prococo did was refer the lobbyist, the representative for CPV, to other government officials. And even in McDonald, I mean, apart from the issue of the insufficiency of the evidence, McDonald says that referring a constituent, and here a constituent's lobbyist, to another official is one of the myriad decisions customarily performed by public officials that do not amount to an official act. Turning to the power purchase agreement, we previously briefed the point that all Mr. Prococo did in that connection was schedule some meetings. And we all know that the scheduling of meetings is not an official act under McDonald. Pardon? By itself. That's the language of McDonald. By itself. If they have other evidence, it may still be probative of guilt in any event. We're not the merits panel. Right. You're arguing to us why you have a close question or novel question. Well, just on this point, Your Honor, I will quote the government's argument to the jury. Mr. Prococo arranged for several meetings between co-defendant Braith Kelley of CPV and high-ranking government officials. That was their description itself. I'll conclude with a paraphrase of Judge Kapronis at the panel that you referred to, Judge Sack, as having participated in. Judge Kapronis basically said, under the circumstances where there's no risk of flight, no risk of danger, and this was a question put to the government, why not join issue on the merits before a merits panel while the defendant remains at liberty? Thank you. My brief is due next month. Mr. Prococo has been on bail since 2016. He's been on bail for a year since his sentence. He's been on bail nearly six months, you know, since we've — since we filed our notice of appeal. I don't see the harm in him remaining on bail pending appeal, which we'll be, you know, briefing almost immediately. Thank you. I think we have the argument. We'll hear from the government. May it please the Court, my name is Matthew Podolsky, and I represent the United States. Now, this Court should reject the motions by both defendants and affirm the order of the district court. Is there, in your view, a difference between the two defendants for these purposes? There are, Your Honor, and actually, that's a point I wanted to make right up front, so thank you for asking. That's why I asked right up front. On the legal questions, there's very — the purely legal questions, I think there is very little difference. But when we get to harmlessness, there is — they are two separate defendants, and they're situated quite differently. For Mr. Aiello, we've argued in our brief, and I'm happy to go through in more detail why his arguments, even if accepted, would not lead to a new trial or reversal. But certainly as to Mr. Prococo, certainly as to Mr. Prococo, any of his arguments, even if accepted, would be harmless. And the reason is that he was convicted on three separate counts that span two schemes, both the core scheme that involved Mr. Aiello as well as the CPV scheme that was separate that involves another co-conspirator. And on the CPV scheme, on the CPV scheme, nothing about that conviction would be altered by different jury instructions on either the as-opportunities-arise issue or on this — what they've termed — tried to phrase as a private-citizen issue. And that's because, taking the second one first, this private-citizen idea, that — the CPV plan was conceived and completed and acted out over years before Mr. Prococo left government. It started in 2012. It continued up to the point he left government, and actually he managed to continue to receive payments from his co-conspirator even after he left. But the point is that the agreement began in 2012 when he was executive deputy secretary to the governor of New York. He agreed to take official action at that time, and he did take official action while serving as executive deputy secretary to the governor. And I'll point out on this, Judge Caproni addressed this question, and she found that it would be harmless, beyond a reasonable doubt, as to Mr. Prococo. And I think that finding deserves deference here. As for the as-opportunities-arise question for Mr. Prococo — Judge Caproni had an advantage that we don't have, which is she, of course, presided over the trial and was intimately familiar with it. The question for us here is, we are not the merits panel. And so in deciding whether the question is close in the sense of whether a panel could have decided differently from how you're urging, you're asking us to get pretty deep into the record of the case and to try and assess whether this could have had any weight in the jury's mind. Very frequently when we say that a question is not close or whatever, it's because, you know, there's a precedent that's almost directly on point. You may, in fact, persuade the merits panel on just the point you're making, among others that you argue. But how do we — how do we conclude here that it would be impossible for another panel or that it's unlikely that another panel would — could — could find differently? Sure. So, let me try to separate a few of the issues. On the legal issues — on the legal issues, our point is exactly the one you just made, which is there is controlling circuit precedent on each of these issues. But as for the factual issue we were just discussing, the harmlessness issue, and in particular whether there could be any harm caused by an error in the jury instruction as to this private citizen idea, you can rely on Judge Caprone's decision. Because as you noted, she was intimately familiar with the facts in this case, and she found on this issue that there would be no difference — there could not be a difference if the — if Mr. Prococo prevailed. So do we make that decision deferentially, or are we obliged to do de novo review? I believe on that question, because it involves factual findings by the judge, and in particular the judge who is intimately involved with the facts of this trial. My understanding is you would defer to Judge Caprone's findings on that. I'm hard-pressed to understand that, because harmlessness, whether — and error, which you're saying for purposes of this part of your argument, you'd say even if there was error, whether it was harmless, I would think would be a de novo review question. Am I — am I missing something? Well, Your Honor, I think the law on this — on the standard to apply in these bail pending appeal proceedings is maybe not fully developed as much as it is in other areas. But there are numerous cases that refer to deferring to the — to the judgment of the district court on issues with which the district court is intimately familiar. I think in most cases it has to do with risk of flight and danger, but this is one where the district court knew the case and made a finding. And let me point out that even if there wasn't some — even if you were to take de novo review of this, nonetheless, you have an opinion by the district judge that was carefully thought out. It was — the judge not only sat through the trial, was clearly fully aware of the record, but carefully thought through these issues when they were briefed after trial. And you can rely on that opinion and the reasoning in that opinion to reach your conclusion on the issue today. I don't want to keep you on the facts and not let you argue about the legal errors. The question I'd ask you on that is, you have precedent pre-McDonnell — Ms. Shapiro says even pre-McNally — that seems to support many of the arguments you've advanced, but isn't the question that a merits panel will have to consider whether those precedents have to be reconsidered now in light of especially McDonnell, possibly other cases that followed it, and that it's possible a merits panel might look at it differently? I mean, the question of whether someone can be liable for denying the public honest services when one is not on the public payroll is a challenging question, and so they're arguing that we'd have to relook at Margiotta and the other cases you've cited. Why isn't that at least a question on which another panel might come out differently from the precedent? Yes, Your Honor, I understand they're urging essentially this Court, and they'll urge the Circuit based on some statements in — in McDonnell, but the fact is — The panel may — may not do that, but now the question is not which side the merits panel is going to come on, but whether there's really only one way the merits panel could come out, and I'm not sure how — how we would reach that conclusion. That's right, Your Honor. The question is, is it close? Is it a close question, one that could easily go — go either way? And our position, and the position articulated very clearly by the District Court as well, is it's not a — it's not a close question. All right, so you — I'm not trying to oversimplify, but you're saying, of course, it could go either way, but not — you know, anything could go either way, but it couldn't easily go either way because the law is clear enough that it would take something somewhat difficult. I think that's fair in the sense that it is true. A panel of this Court could decide, notwithstanding precedent, simply to change the law. An en banc panel could change the law. It's possible. But that's not what the cases — Randall and the cases relied on Randall asked for. The question is, as you say, is it close? Is it reasonably likely that this could go either way and result in a new trial? Can I ask you a question while I'm talking to you? We — we don't know why — I mean, there's no public statement as to why Sheldon Silver was granted bail pending appeal, but the — but what you do know is the difference between — is the difference between the Silver case in which the bail was granted and this case where you're arguing it shouldn't be. And I thought perhaps you could compare the two — the two cases in the hopes that we'll be consistent running our answers to — our response to the bail motion in each. Sure. So, as you know, Judge Sack, the — in Sheldon Silver, there were two issues raised at bail. One is this as-opportunities-arise theory, and one was whether there needed to be an agreement essentially on both sides of the quid pro quo, whether both parties had to understand there was an agreement in order to sustain conviction. That latter question is not raised here. So — That latter question would have been the close one, in your view, if — if — I'm not asking you to concede it was close. I'm just asking you whether that's the difference, is that issue was there and it's not here. Well, there is another difference, which I'll get to in a moment, but without the privilege of knowing the thinking of the panel in that case, all I can say is our view is profoundly that the as-opportunities-arise question is not close. I will — Let me just follow up on that for a minute. So can you point to any successful prosecutions using the Margiotta theory of fiduciary duty to the public embodied in a private citizen that have happened? I mean, Margiotta was 1982, and as Judge Radji has been pointing out, there's been substantial development of the law since then. Where else has there been a successful prosecution on that theory? Not to be glib, Your Honor. This case. This case, the jury was properly instructed under the law of the circuit, and the facts of this case make — I think make clear why it's important. I'm looking for a legal precedent upholding that theory other than — Yeah, I understand. — obviously here. So let me say this. I don't think it's a set of facts that have appeared again in this way in the circuit until now. And I think it's because it's not common for people who don't have a formal relationship with the government to be given the kind of duty that fiduciary duty — But the answer is you know of none. Right. Yeah. But I do want to make one point on that. I don't know of a precedent other than this where those were the facts. But I will point out that Margiotta has repeatedly been relied on in many cases for the test that it enunciated. So the test remains valid, and Chessman and Halloran, they all take the same test. And the reason that test is the right test is the question there is whether — and what the wire fraud statutes require is whether the defendant defrauded the victim, somebody to whom he or she owed a fiduciary duty or a duty of honest services, defrauded that victim of his or her honest services. That's exactly what happened — None of those occurred in the — right? That's correct, Your Honor. That's correct, Your Honor. I don't mean to quibble. That is correct. Thank you. And indeed, I mean, my understanding is that your position in this case is that this is a step removed from Margiotta, who never held any kind of public office, that Mr. Pococco, anyways, power was directly attributable to his once-holding public office and then resuming it. Now, see, the problem is, again, you may persuade on that. I can't predict that. But it seems to be a novel question in the sense of we haven't specifically considered whether that would be a circumstance where, yes, he could deprive the public of honest services even in the interim when he wasn't employed by the government. Let me make a — if I may, I'll make a few observations about that. Please. In the first, I want to answer directly, but I do want to, again, emphasize that as to Mr. Pococco, this is — on the CPV side, this is really not a relevant question. But that's right. As you know, this is much more core to traditional bribery, what happened here, than in Margiotta. In Margiotta, we're talking about a party chairman who basically was just very powerful. What we have in this case is somebody who was the — by people's estimation, second or third most powerful person by his title in the executive department of New York State, for a brief period, moved over to run the campaign of the governor who he was serving as executive deputy secretary. And during that period, the evidence showed and the jury found continued to act in precisely the same capacity. So it is much more — it's not Margiotta in that sense. But the other comment I want to make about that is with cases across the board in honest services fraud and in 666, say, is you look — the question is not whether the state has defined under its law or its titles the person as an agent of the state or someone who owes a fiduciary duty. The question is one under federal law, under 666, whether the person is an agent under the honest services fraud statute, whether the person owes a duty of honest services. So you look at cases like Dixon, Halloran, Lupton in the Seventh Circuit, Vitillo in the Third Circuit. All of these look at the facts. What were the facts? They don't look at the contract. In fact, Lupton specifically says you can't look at the contract. I think in that case, there was a contract between a real estate agent and the government that specifically said he's not an agent of the government. And they said that doesn't matter. It's not up to the state to define. It's up to the statute. The statute sets forth a test, and that test as a factual matter was fulfilled, and the jury so concluded. But — and again, I'm not predicting how you would prevail or not on this, but when you look at the first amendment, the first amendment challenge was there to whether or not recognizing him as having a duty when he wasn't holding office ran into First Amendment problems. McDonnell now has cautioned that even as to people holding office, there are these concerns. So won't that be a new analysis that the panel, the Merits panel, will have to entertain? My recollection of Margiotta's arguments, and I don't want to overstate it, I don't think it was raised in exactly this way at all. My recollection is there is some discussion about sort of overbreadth of criminalizing activities that might be traditionally political, which I think really bleeds into the same type of argument that you're — that you're discussing here. But I think what's important to remember is McDonnell is a question of statutory interpretation as to the phrase official act in Section 201. It simply has nothing to do with the question of who is under Section 201 a public official, because that's the required class of people who can be defendants, but in 666 an agent or representative of the government or under honest services fraud who — who owes a duty of honest services. It simply doesn't speak to that. And I think that's important because, Judge Reggie, I think you opened up the argument with Ms. Shapiro by — by pointing out that McDonnell himself was a public official and therefore it wasn't raised in that case. But I actually think it's more than that. It's that under Section 201, Section 201 actually has the phrase baked in, a public official must be the defendant. I thought that didn't agree. And that's not the case under the statutes here. Did you say that CPV is the one in which — is the one of the two in which this issue is not central? Correct, Your Honor. And that's — Supposing we thought there was a legitimate question as to one but not as to the other, how would that affect our — this case? Sure. So if — what I take it you're suggesting is perhaps it was harmless as to Mr. Prococo but not as to Mr. Aiello, I — If that's what I'm saying. I mean, you know the case rather better than I do.  Let me rephrase that. All right. You're saying that with respect to Mr. Prococo, it really doesn't matter because it's clear that he was covered with respect to the CPV. Correct. So I think if you're inclined to think that the legal questions are close enough to merit bail, which we don't agree with, but if you're inclined to think that, then certainly as to Mr. Prococo, he still wouldn't merit bail because it would not overturn all of his convictions. Thank you very much. Thank you for your arguments. We'll try to get you a decision shortly, but we'll reserve a decision for now. Thank you, Your Honor.